# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

JEREMY LEDESMA, as Personal Representative
of the Estate of MELISSA A. LEDESMA, Deceased,

        Plaintiff,                    Case No

v.                                     Hon.

NAPHCARE, INC.; APRIL A. BROWN, RN; SHAVON
FOWLER, RN; CRYSTAL L. MATHIS, RN; MONIQUE
RUSAN, LPN; STEVEN M. GRILL, RN; LILA S. ALI, LPN;
ROCHELLE A. MILLER, LPN; LANESHIA R. EADDY, LPN;
BATRICE J. JONES, RN; RACQUEL B. MORTON, LPN;
KELLINA W. BROWN, LPN; SAMIA L. WILLIAMS, LPN;
DEANNAH M. HUGHES, LPN; KIM R. CRENSHAW, LPN:
ANDREA L. HIGGONBOTHAM, NP; NICHOLAS J.
KAJDAN, NP; SOPHIA L. BARNES, LP;
EMILY C. ELLIS, NP; MARSHA K. BURGESS, NP,
 and DR. MONIQUE M. REEVES; COUNTY OF WAYNE,
DEPUTY CLARK; and 57 JOHN and JANE DOES;

        jointly and severally.

        Defendants.

---

GEOFFREY N. FIEGER (P30441)
DAVID A. DWORETSKY (P67026)
*Fieger, Fieger, Kenney & Harrington, P.C.*
Attorneys for Plaintiff
19390 W. Ten Mile Rd.
Southfield, MI 48075
(248) 355-5555
d.dworetsky@fiegerlaw.com

---

## COMPLAINT, AFFIDAVITS OF MERIT, AND DEMAND FOR JURY TRIAL

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

NOW COMES Plaintiff, JEREMY LEDESMA, as Personal Representative of the Estate of MELISSA A. LEDESMA, Deceased, by and through his attorneys, *FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.*, for his Complaint, Affidavits of Merit, and Demand for Jury Trial against the above-named Defendants, states as follows:

## JURISDICTION AND VENUE

1. This action arises under the United States Constitution, particularly under the provisions of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and under the laws of the United States, particularly under the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988, and under the statutes and common law of the State of Michigan.

2. This court has jurisdiction over this cause of action under the provisions of 28 U.S.C. §§ 1331 and 1343 and pendent jurisdiction over state claims that arise out of the nucleus of operative facts common to Plaintiff's federal claims.

3. The unlawful actions alleged in this Complaint took place within the City of Detroit, County of Wayne, State of Michigan, and as such jurisdiction lies in the United States District Court for the Eastern District of Michigan. Venue is proper under 28 U.S.C. §1391(b).

4.     The amount in controversy greatly exceeds Seventy-Five Thousand ($75,000.00) Dollars, excluding interest, costs and attorney fees.

**PARTIES**

5.     Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

6.     At all times relevant to this lawsuit, Plaintiff, JEREMY LEDESMA, has been duly appointed as the Personal Representative of the Estate of MELISSA A. LEDESMA, Deceased, in the Wayne County Probate Court, Case# 2022-876747-DE, Honorable Lawrence J Paolucci, presiding.

7.     At all times relevant hereto, Defendant, COUNTY OF WAYNE, ("WAYNE COUNTY") was a municipal corporation, duly organized in carrying on governmental functions in the County of Wayne, State of Michigan, and one of the functions was to organize, operate, staff, train, and supervise the jail operations at the Wayne County Jail.

8.     At all times relevant hereto, Defendant, DEPUTY CLARK, was a deputy officer at the Wayne County Jail, employed by WAYNE COUNTY, who was acting under the color of state law, within the course and scope of employment with WAYNE COUNTY and was acting under the color and

pretense of ordinances, regulations, laws and customs of WAYNE COUNTY, and is being sued individually and in official capacities.

9.      At all times relevant hereto, the 57 JOHN and JANE DOES Defendants, were officers and deputies at the Wayne County Jail, employed by WAYNE COUNTY, who were acting under the color of state law, within the course and scope of their employment with WAYNE COUNTY and were acting under the color and pretense of ordinances, regulations, laws and customs of WAYNE COUNTY, and are to be sued individually and in official capacities once identified.[1]

10.     Defendant, WAYNE COUNTY, is responsible for, and does in fact, hire, train, supervise, and instruct officers/deputies, Wayne County Jail detention officers, and jail staff of all grades in the performance of their duties.

11.     At all times relevant hereto, Defendant, NAPHCARE, INC. ("NAPHCARE") is an Alabama company and/or corporation that conducts regular business in Wayne County, Michigan.

12.     Upon information and belief, Defendant, NAPHCARE's Resident Agent is CSC-Lawyers Incorporating Service (Company), 3410 Belle Chase Way, Ste. 600, Lansing, MI 48911.

---

[1] Plaintiff's FOIA request to the WCSO was granted in part and denied in part, with WCSO officers and deputies names, etc. redacted, based upon MCL 15.243(l)(s)(viii) and (ix).

13.     Upon information and belief, Defendant, APRIL A. BROWN, RN, is a registered nurse licensed to practice nursing in the State of Michigan, and conducts regular business in the County of Wayne, State of Michigan.

14.     Upon information and belief, Defendant, SHAVON FOWLER, RN, is a registered nurse licensed to practice nursing in the State of Michigan, and conducts regular business in the County of Wayne, State of Michigan.

15.     Upon information and belief, Defendant, CRYSTAL L. MATHIS, RN, is a registered nurse licensed to practice nursing in the State of Michigan, and conducts regular business in the County of Wayne, State of Michigan.

16.     Upon information and belief, Defendant, MONIQUE RUSAN, LPN, is a licensed practical nurse licensed to practice in the State of Michigan, and conducts regular business in the County of Wayne, State of Michigan.

17.     Upon information and belief, Defendant, STEVEN M. GRILL, RN, is a registered nurse licensed to practice nursing in the State of Michigan, and conducts regular business in the County of Wayne, State of Michigan.

18.     Upon information and belief, Defendant, LILA S. ALI, LPN, is a licensed practical nurse licensed to practice in the State of Michigan, and conducts regular business in the County of Wayne, State of Michigan.

19.     Upon information and belief, Defendant, ROCHELLE A. MILLER, LPN, is a licensed practical nurse licensed to practice in the State of Michigan, and conducts regular business in the County of Wayne, State of Michigan.

20.     Upon information and belief, Defendant, LANESHIA R. EADDY, LPN, is a licensed practical nurse licensed to practice in the State of Michigan, and conducts regular business in the County of Wayne, State of Michigan.

21.     Upon information and belief, Defendant, BATRICE J. JONES, RN, is a registered nurse licensed to practice nursing in the State of Michigan, and conducts regular business in the County of Wayne, State of Michigan.

22.     Upon information and belief, Defendant, RACQUEL B. MORTON, LPN, is a licensed practical nurse licensed to practice in the State of Michigan, and conducts regular business in the County of Wayne, State of Michigan.

23.     Upon information and belief, Defendant, KELLINA W. BROWN, LPN, is a licensed practical nurse licensed to practice in the State of Michigan, and conducts regular business in the County of Wayne, State of Michigan.

24.   Upon information and belief, Defendant, SAMIA L. WILLIAMS, LPN, is a licensed practical nurse licensed to practice in the State of Michigan, and conducts regular business in the County of Wayne, State of Michigan.

25.   Upon information and belief, Defendant, DEANNAH M. HUGHES, LPN, is a licensed practical nurse licensed to practice in the State of Michigan, and conducts regular business in the County of Wayne, State of Michigan.

26.   Upon information and belief, Defendant, KIM R. CRENSHAW, LPN, is a licensed practical nurse licensed to practice in the State of Michigan, and conducts regular business in the County of Wayne, State of Michigan.

27.   Upon information and belief, Defendant, ANDREA L. HIGGONBOTHAM, NP, is a registered nurse practitioner licensed to practice as a nurse practitioner in the State of Michigan, and conducts regular business in the County of Wayne, State of Michigan.

28.   Upon information and belief, Defendant, NICHOLAS J. KAJDAN, NP, is a registered nurse practitioner licensed to practice as a nurse practitioner in the State of Michigan, and conducts regular business in the County of Wayne, State of Michigan.

FIEGER LAW · A PROFESSIONAL CORPORATION · ATTORNEYS AND COUNSELORS AT LAW · 19390 WEST TEN MILE ROAD · SOUTHFIELD, MICHIGAN 48075-2463 · TELEPHONE (248) 355-5555 · FAX (248) 355-5148

29.     Upon information and belief, Defendant, SOPHIA L. BARNES, RN, CRNP, is a registered nurse and certified registered nurse practitioner licensed to practice as a registered nurse and nurse practitioner in the State of Alabama, and conducts regular business in the County of Wayne, State of Michigan.

30.     Upon information and belief, Defendant, EMILY C. ELLIS, NP, is a registered nurse practitioner licensed to practice as a nurse practitioner in the State of Michigan, and conducts regular business in the County of Wayne, State of Michigan.

31.     Upon information and belief, Defendant, MARSHA K. BURGESS, NP, is a registered nurse practitioner licensed to practice as a nurse practitioner in the State of Michigan, and conducts regular business in the County of Wayne, State of Michigan.

32.     Upon information and belief, Defendant, DR. MONIQUE M. REEVES is a registered medical doctor licensed to practice medicine in the State of Michigan, and conducts regular business in the County of Wayne, State of Michigan.

33.     At all times relevant hereto, Defendant, DR. MONIQUE M. REEVES, was engaged in the practice of medicine in Wayne County, State of Michigan, and held herself out to the public in general, and to MELISSA A.

LEDESMA, deceased, in particular, as a skilled and competent medical doctor, capable of properly and skillfully treating, caring for, and providing medical services to the public in general, and to Decedent, MELISSA A. LEDESMA, in particular.

34.     At all times relevant hereto, Defendants, APRIL A. BROWN, RN; SHAVON FOWLER, RN; CRYSTAL L. MATHIS, RN; MONIQUE RUSAN, LPN; STEVEN M. GRILL, RN; LILA S. ALI, LPN; ROCHELLE A. MILLER, LPN; LANESHIA R. EADDY, LPN; BATRICE J. JONES, RN; RACQUEL B. MORTON, LPN; KELLINA W. BROWN, LPN; SAMIA L. WILLIAMS, LPN; DEANNAH M. HUGHES, LPN; KIM R. CRENSHAW, LPN, ("NAPHCARE NURSES") were engaged in the practice of nursing in the County of Wayne, State of Michigan, and held themselves out to the public in general, and to MELISSA A. LEDESMA, deceased, in particular, as a skilled and competent Registered Nurse(s)/Licensed Practical Nurse(s), capable of properly and skillfully treating, caring for, and providing medical services to the public in general, and to MELISSA A. LEDESMA, deceased, in particular.

35.     At all times relevant hereto, Defendants, ANDREA L. HIGGONBOTHAM, NP; NICHOLAS J. KAJDAN, NP; SOPHIA L. BARNES, LP; EMILY C. ELLIS, NP; MARSHA K. BURGESS, NP,

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

(NAPHCARE NPs") were engaged in the practice as a Nurse Practitioner(s) in the County of Wayne, State of Michigan, and held themselves out to the public in general, and to MELISSA A. LEDESMA, deceased, in particular, as skilled and competent Nurse Practitioner(s), capable of properly and skillfully treating, caring for, and providing medical services to the public in general, and to MELISSA A. LEDESMA, deceased, in particular.

36. At all times relevant hereto, Defendants "NAPHCARE NURSES," "NAPHCARE NPs," and DR. MONIQUE M. REEVES, were the actual, apparent, and/or ostensible principals, agents, servants, and/or employees of Defendant, NAPHCARE, and at all times relevant hereto, were acting within the course and scope of their agency and/or employment with Defendant, NAPHCARE, when the negligence, medical malpractice, gross negligence, deliberate indifference alleged herein was committed, thereby imposing vicarious liability upon the corporate Defendant, NAPHCARE.

37. Defendant, NAPHCARE, is vicariously liable for the actions and inactions of all of its agents, ostensible agents, and/or employees whether physicians, residents, nursing staff, emergency medical technicians and/or paramedics or other healthcare providers as set forth herein and incorporated by reference herein.

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

38.     Defendant, NAPHCARE, is further liable in its own capacity for its own actions and inactions of negligence, gross negligence, deliberate indifference and/or professional malpractice.

39.     At all times relevant to this Complaint, Defendant, NAPHCARE, was performing health care services for Wayne County, in particular, at the Wayne County Jail.

## FACTUAL STATEMENT

40.     Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

41.     During the morning hours of May 20, 2022, Decedent, Melissa A. Ledesma, experienced a severe and intense epileptic seizure, began to act erratically following the seizure, starting attacking her husband, Jeremy Ledesma, and called the Canton Police Department.

42.     Melissa A. Ledesma had a history of seizure disorder and had been under a doctor's care.

43.     When officers from the Canton Police Department arrived, they discovered that Decedent had an outstanding warrant, and took her to St. Mary Mercy Hospital in Livonia for medical clearance.

44.    Following discharge from St. Mary Mercy Hospital, Decedent was taken to the Canton Twp. Jail.

45.    Her husband, Jeremy, dropped off her medications at the Canton Twp. jail, which included Vimpat for her seizure disorder, a heart medication, and suboxone.

46.    That decedent had been prescribed Vimpat and Suboxone, because she was allergic to Keppra and Buspirone.

47.    Decedent was transferred to Wayne County Jail on May 21, 2022.

48.    On May 21, 2022, the Wayne County Jail initial screening was performed by Defendant, BATRICE JONES, RN, an employee of Defendant, NAPHCARE.

49.    During the screening, Defendant, JONES, noted the decedent's seizure disorder, and noted that the decedent should be placed on detox watch.

50.    During the screening Defendant, JONES, expressly noted that the decedent was allergic to Keppra and Buspirone.

51.    NAPHCARE and its employees further had in their possession medical records for Melissa Ledesma, including prior NAPHCARE charts/records, and the medical records from St. Mary Mercy when those records were finally requested by Defendant, MONIQUE REEVES on May

FEIGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

22, 2022, and received by NAPHCARE on May 23, 2022. The NAPHCARE and St. Mary Mercy records were clear that the decedent was taking Vimpat for her seizure disorder.

52. Despite the intake notes that the decedent was allergic to Keppra, Defendant, ANDREA HIGGONBOTHAM, NP, prescribed Keppra for decedent's seizure disorder.

53. Upon information and belief, over the next seven days, the decedent's physical condition began to deteriorate, including but not limited to a severe increase in diastolic blood pressure, becoming increasingly weak and sleepy, and had a change in mental status.

54. Upon information and belief, over the next seven days, Defendants, "NAPHCARE NURSES," "NAPHCARE NPs," and DR. MONIQUE M. REEVES, were responsible for the medical care of decedent.

55. Upon information and belief, over the next seven days, both before and after obtaining the St. Mary Mercy records, and witnessing the deterioration of the decedent's physical and mental health, the above stated Defendants, failed to provide decedent with the proper medication, Vimpat, and either provided the decedent Keppra for her seizure disorder and/or eventually nothing at all.

56. Either way, Decedent was never placed on the proper medication for her seizure disorder, despite the information as to the proper medication being in her current chart, previous chart(s), and/or the St. Mary Mercy records.

57. Decedent was further not provided with other prescribed medications, including but not limited to Zoloft and Gabapentin, which increased the risk of seizures.

58. Upon information and belief, over the next seven days, Defendants, DEPUTY CLARK, and the 57 JOHN and JANE DOES, were confronted with an inmate, specifically, the decedent, whose condition continued to deteriorate where decedent began to feel weak and sleepy over time, began yelling and banging on the cell doors, made pleas for help, soiled her clothes, bit her tongue, had blood over all her cell, all representing a clear change in mental status, physical condition, and a medical emergency.

59. Upon information and belief, over the next seven days, Defendants, DEPUTY CLARK, and the 57 JOHN and JANE DOES, ignored decedent's pleas and ignored decedent's deteriorating physical and mental condition.

60. On the night of May 28, 2022, decedent had a seizure.

61.     In the early morning of May 29, 2022, Defendant, MATHIS, noted that Melissa had low oxygen and high blood sugar at 8:20 a.m. She did nothing.

62.     Shortly thereafter, Defendant, MILLER, found decedent lying on the floor at 8:30 a.m., but left her alone and did nothing.

63.     An emergency call was not made until after 9:00 a.m.

64.     The Medical Examiner's report indicates that Decedent was pronounced deceased at 11:18 a.m.

65.     NAPHCARE recorded the time of death as 9:50 a.m.

66.     Upon information and belief, the Wayne County Medical Examiner's opinion of Decedent, MELISSA A. LEDESMA's, death was "caused by seizure disorder."

67.     Upon information and belief, the death certificate indicates Decedent's death was a result of her seizure disorder.

68.     During Decedent's entire jail stay, Defendants, DEPUTY CLARK, and the 57 JOHN and JANE DOES, observed Decedent's overall discomfort and sleep difficulties, requests for medical attention, calls for help, her deteriorating physical condition, her changes in mental status, the signs and symptoms of a medical emergency increasing in intensity and in frequency, and that NAPHCARE was essentially doing nothing.

69.     Upon information and belief, no action was taken by Defendants, DEPUTY CLARK, and the 57 JOHN and JANE DOES, despite the obvious medical emergency.

70.     At all times relevant hereto, the individually named Defendants, DEPUTY CLARK, and the 57 JOHN and JANE DOES, failed to timely and/or appropriately perform physical jail cell checks as required.

71.     At all times relevant hereto, the Wayne County Jail was equipped with visual and audio monitoring systems, and DEPUTY CLARK, and the 57 JOHN and JANE DOES, failed to timely and/or appropriately monitor Decedent and/or utilize the video and audio monitoring equipment as required of them.

72.     At all times during the incarceration of Decedent, MELISSA A. LEDESMA, at the Wayne County Jail, Decedent, behaved in such a fashion that was highly evident that she was experiencing several medical episodes, was rapidly deteriorating, and needed prompt and immediate medical treatment.

73.     At all times relevant hereto, Defendants, DEPUTY CLARK, and the 57 JOHN and JANE DOES, knew or should have known of Decedent's delicate state and deteriorating condition.

74.     At all times relevant hereto, Defendants, DEPUTY CLARK, and the 57 JOHN and JANE DOES, did not initiate close observation of Decedent, and/or take proper precautions to protect her, and/or take steps to properly and adequately monitor her.

75.     Defendants, DEPUTY CLARK, and the 57 JOHN and JANE DOES, ignored Decedent and left her in her cell without further monitoring for extended periods of time despite Decedent being incoherent during that time.

76.     Defendants are not entitled to governmental immunity and/or qualified immunity.

**COUNT I**
**DELIBERATE INDIFFERENCE TO MEDICAL NEEDS**
**AGAINST DEFENDANTS DEPUTY CLARK,**
**and the 57 JOHN and JANE DOES**

77.     Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

78.     At all times mentioned herein, Defendants, DEPUTY CLARK, and the 57 JOHN and JANE DOES, were acting under color of law, and the ordinances, regulations, and/or customs of the Wayne County Jail and Defendant, WAYNE COUNTY.

79.     At all times relevant hereto, the Defendants, DEPUTY CLARK, the 57 JOHN and JANE DOES, and WAYNE COUNTY subjected Decedent, MELISSA A. LEDESMA, to a deprivation of her rights, privileges, and immunities, as secured by the Constitution and laws of the United States and State of Michigan.

80.     Pursuant to 42 U.S.C. § 1983, as well as the Eighth, and Fourteenth Amendments to the United States Constitution, Defendants, DEPUTY CLARK, the 57 JOHN and JANE DOES, and WAYNE COUNTY owed Decedent, MELISSA A. LEDESMA, the duties to act prudently and with reasonable care, and otherwise to avoid cruel and unusual punishment.

81.     Pursuant to the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, the Civil Rights Acts, specifically 42 U.S.C. § 1983, an inmate like Decedent, MELISSA A. LEDESMA, had the right to medical treatment for serious medical needs while in custody as well as to be free from cruel and unusual punishment.

82.     The conduct of Defendants, DEPUTY CLARK, the 57 JOHN and JANE DOES, and WAYNE COUNTY, deprived Decedent, MELISSA A. LEDESMA, of her clearly established rights, privileges, and immunities in violation of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution and 42 USC § 1983.

83.   The Defendants, DEPUTY CLARK, the 57 JOHN and JANE DOES, and WAYNE COUNTY, owed a duty to the general public, and specifically to Decedent, MELISSA A. LEDESMA, to act prudently and with reasonable care in the formulation of its policies and procedures relative to providing medical treatment to inmates, as well as to train, test, evaluate, review, and update its officers' abilities to function in a reasonable manner and in conformance with the laws of the United States and the State of Michigan relative to providing inmates with the appropriate and relevant medical attention to their known and well documented medical needs.

84.   Defendants, DEPUTY CLARK, the 57 JOHN and JANE DOES, and WAYNE COUNTY, violated Decedent's civil rights when they displayed deliberate indifference toward Decedent, MELISSA A. LEDESMA's, serious medical condition in the following ways:

a.  Failed to properly train officers and jail personnel in the evaluation of whether an inmate needs medical treatment;

b.  Failed to provide Decedent with timely and/or immediate medical attention for a serious medical need;

c.  Failed to assure that Decedent was examined and/or treated after she exhibited signs of distress and erratic behavior as described previously;

d.  Failed to assure that Decedent was examined and/or treated after she exhibited signs of medical episodes;

e. Failed to perform physical jail cell checks and/or otherwise abide by policies, if any, to ensure the physical well-being of inmates, specifically Decedent;

f. Failed to timely and/or appropriately monitor Decedent, utilizing the video and audio monitoring equipment with which the Wayne County Jail was equipped;

g. Failed to adequately monitor the well-being of Decedent, with knowledge that Decedent suffered from a seizure disorder;

h. Failed to provide timely and/or immediate medical attention to Decedent;

i. Allowed Decedent, an inmate with known serious health conditions to be left alone in her cell with no supervision/monitoring, or ignoring of same;

j. Allowed Decedent with known serious health condition to be left alone in her cell with no supervision/monitoring, or ignoring of same, while on the wrong medications with serious side effects; and

k. Any and all other breaches that become known during the course of discovery which are hereby incorporated by reference.

85.    The acts and/or omissions of Defendants, DEPUTY CLARK, the 57 JOHN and JANE DOES, and WAYNE COUNTY, violated the civil rights of Decedent, MELISSA A. LEDESMA, which directly and proximately caused Decedent to suffer numerous injuries including, but not limited to the following:

a. Conscious physical pain and suffering endured by Decedent prior to her death;

b. Medical and hospital expenses;

c. Funeral and burial expenses;

d. Death;

e. Loss of financial support from Decedent;

f. Loss of society and companionship of Decedent;

g. Attorney fees and costs pursuant to 42 U.S.C. §1988;

h. Any and all other damages allowed by law; and

i. All other damages learned through the course of discovery and otherwise recoverable under the law.

86. The acts and/or omissions of Defendants, DEPUTY CLARK, the 57 JOHN and JANE DOES, and WAYNE COUNTY, were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of Decedent, MELISSA A. LEDESMA, and Plaintiff therefore requests an award of punitive and exemplary damages against these Defendants according to proof.

87. Plaintiff has retained private counsel to represent him in this matter and is entitled to an award of attorney fees and costs.

**WHEREFORE,** Plaintiff, JEREMY LEDESMA, as Personal Representative of the Estate of MELISSA A. LEDESMA, Deceased, respectfully requests this Honorable Court enter a judgment in his favor against all Defendants and award an amount in excess of Seventy-Five

Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

## COUNT II
### FAILURE TO TRAIN, INADEQUATE POLICIES and/or PROCEDURES, CUSTOMS, AND PRACTICES, AND FAILURE TO SUPERVISE – DELIBERATE INDIFFERENCE DEFENDANT, COUNTY OF WAYNE

88. Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

89. Pursuant to 42 USC § 1983, as well as the Fourth and Fourteenth Amendments to the United States Constitution, Defendant, WAYNE COUNTY, owed Decedent, MELISSA A. LEDESMA, certain duties to properly supervise, monitor, and train its officers to supervise the jail's inmates so that they would detect serious medical conditions and facilitate prompt and proper medical attention.

90. Defendant, WAYNE COUNTY, breached these duties via its and/or absence thereof its policies, procedures, regulations, customs and/or lack of and/or inadequate training, and thus exhibited a deliberate indifference toward its inmates, and specifically toward Decedent, MELISSA A. LEDESMA, when Defendant WAYNE COUNTY:

a. Failed to staff the jail with competent officers, and specifically, failed to ensure that individually named Defendants as stated

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

above, would respond competently to events involving inmates at the jail;

b.  Failed to have policies, procedures, regulations, and/or customs to monitor and/or adequately monitor inmates, including but not limited to those, such as Decedent, who have medical conditions of which they have been previously provided notice;

c.  Failed to have policies, procedures, regulations, and/or customs to monitor and/or adequately monitor the well-being of inmates;

d.  Failed to ensure officers conduct timely and adequate physical jail cell checks on inmates to ensure the physical well-being of each inmate, and specifically Decedent;

e.  Failed to have policies, procedures, regulations, and/or customs to monitor and/or adequately monitor inmates to ensure the well-being of each inmate, specifically Decedent;

f.  Failed to have policies, procedures, regulations, and/or customs to monitor and/or adequately monitor the well-being of inmates utilizing the audio/visual system with which the jail was equipped;

g.  Failed to provide training and/or adequate training to its officers for the proper use of its audio/visual system with which the jail was equipped to ensure the well-being of each inmate;

h.  Failed to provide training and/or adequate training to its officers to ensure the proper execution of policies, procedures, regulations, and/or customs to monitor and/or adequately monitor inmates to ensure the well-being of each inmate, specifically Decedent;

i.  Failed to provide training and/or adequate training to its officers to recognize the signs of a medical episode and the need for immediate medical attention;

j. Failed to supervise its officers to ensure that its policies, regulations, procedures, customs, are being properly executed and that each inmate's, and specifically, Decedent's constitutional rights are being protected;

k. Failed to supervise its officers to ensure the adequate monitoring and supervision of inmates who have serious medical needs which require medical attention;

l. Failed to fully investigate and/or discipline and/or retrain its officers who do not abide by its policies, procedures, regulations and/or customs, if any, relative to recognizing the need for medical care and providing immediate medical attention to inmates;

m. Failed to fully investigate and/or discipline and/or retrain its officers who do not abide by its policies, procedures, regulations and/or customs, if any, regarding the frequency and/or sufficiency of physical jail checks, and/or monitoring and/or supervision of inmates by utilizing the audio/visual equipment with which the Wayne County Jail was equipped; and

n. All other breaches learned through the course of discovery which are hereby adopted by reference.

91. Through its agents and employees, Defendant WAYNE COUNTY's treatment of Plaintiff's decedent, including contracting with Defendant, NAPHCARE, and knowing it did not have policies and procedures of hiring and investigating their doctors, nurses, and staff, adequate oversight, supervision, training, procedures, policies, or mechanisms to ensure the safety and health of inmates constitutes an official policy, custom, pattern, or

{01627100.DOCX}                              24

practice that deprived Plaintiff's decedent of her civil rights as guaranteed by the United States Constitution.

92.     The deprivation of constitutional rights alleged in this complaint is the direct result of official policy, customs, and practices of Defendant, WAYNE COUNTY, as well as Defendant, NAPHCARE.

93.     The acts and/or omissions of Defendant, WAYNE COUNTY, violated the civil rights of Decedent, MELISSA A. LEDESMA, which directly and proximately caused Decedent to suffer numerous injuries and damages including death as stated in detail in Count I.

94.     The acts and/or omissions of Defendant, WAYNE COUNTY, were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of Decedent, and Plaintiff therefore requests an award of punitive and exemplary damages against these Defendants according to proof.

95.     Plaintiff has retained private counsel to represent him in this matter and is entitled to an award of attorney fees and costs.

**WHEREFORE,** Plaintiff, JEREMY LEDESMA, as Personal Representative of the Estate of MELISSA A. LEDESMA, Deceased, respectfully requests this Honorable Court enter a judgment in his favor against all Defendants and award an amount in excess of Seventy-Five

Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

### COUNT III
### GROSS NEGLIGENCE AGAINST
### DEFENDANTS - DEPUTY CLARK, and
### the 57 JOHN and JANE DOES

96.    Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

97.    At all relevant times, DEPUTY CLARK, and the 57 JOHN and JANE DOES were acting within the course and scope of their employment with Defendant, WAYNE COUNTY.

98.    That Defendants, DEPUTY CLARK, and the 57 JOHN and JANE DOES owed Decedent, MELISSA A. LEDESMA, the duty to provide medical care for her obviously serious medical needs.

99.    These Defendants, acting within the scope of their employment, breached this duty and were grossly negligent, as defined in MCL 691.1407(2)(c), when they acted so recklessly as to demonstrate a substantial lack of concern as to whether injury would result toward Decedent, and with disregard for her health, safety, and constitutional and/or statutory rights.

100.    At all times relevant, Defendants, DEPUTY CLARK, and the 57 JOHN and JANE DOES, were grossly negligent when they:

a. Failed to properly train officers and jail personnel in the evaluation of whether an inmate needs medical treatment;

b. Failed to provide Decedent with timely and/or immediate medical attention for a serious medical need;

c. Failed to assure that Decedent was examined and/or treated after she exhibited signs of distress and erratic behavior as described previously;

h. Failed to assure that Decedent was examined and/or treated after she exhibited signs of medical episodes;

i. Failed to perform physical jail cell checks and/or otherwise abide by policies, if any, to ensure the physical well-being of inmates, specifically Decedent;

j. Failed to timely and/or appropriately monitor Decedent utilizing the video and audio monitoring equipment with which the Wayne County Jail was equipped;

k. Failed to adequately monitor the well-being of Decedent with knowledge that Decedent suffered from a seizure disorder;

l. Failed to provide timely and/or immediate medical attention to Decedent;

m. Allowed Decedent, an inmate with known serious health conditions, to be left alone in her cell with no supervision/monitoring, or ignoring of same;

n. Allowed Decedent, with known serious health conditions, to be left alone in her cell with no supervision/monitoring, or ignoring of same, while on medications with serious side effects; and

o. Any and all other breaches that become known during the course of discovery which are hereby incorporated by reference.

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

101. The grossly negligent acts and/or omissions of Defendants, DEPUTY CLARK, and the 57 JOHN and JANE DOES, directly and proximately caused Decedent MELISSA A. LEDESMA to suffer numerous injuries and damages including death as stated in detail in Count I.

**WHEREFORE,** Plaintiff, JEREMY LEDESMA, as Personal Representative of the Estate of MELISSA A. LEDESMA, Deceased, respectfully requests this Honorable Court enter a judgment in his favor against all Defendants and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

### COUNT IV
### MALPRACTICE/NEGLIGENCE/GROSS NEGLIGENCE – LIABILITY OF DEFENDANT NAPHCARE, INC.

102. Plaintiff hereby reiterates and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint, as if fully stated herein word for word and paragraph by paragraph.

103. Pursuant to MCL 333.20141 and MCL 333.21513, Defendant, NAPHCARE, INC. ("NAPHCARE") is responsible for all phases of the operation of its medical facility, operations, and/or practice, selection of medical staff, and quality of care rendered in its medical facility, operation, and/or practice.

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

104.   When presented with a patient like Decedent, MELISSA A. LEDESMA, the standard of practice required Defendant, NAPHCARE, to provide care and treatment consistent with that of a reasonable and prudent medical facility, provider, and/or practice.

105.   When presented with a patient like Decedent, Defendant, NAPHCARE, as well as through its agents and employees, including but not limited to Defendants, "NAPHCARE NURSES," "NAPHCARE NPs," and DR. MONIQUE M. REEVES, had a direct duty pursuant to MCL 333.20141 and MCL 333.21513, to do all of the following, which Defendant, NAPHCARE, failed to do, and are, therefore, negligent:

    i.    Select, screen, train, and employ only qualified personnel;

    ii.    Effectively and adequately screen Physicians, Nurse Practitioners, Registered Nurses, and Licensed Practical Nurses during the hiring process before allowing them to provide patient care;

    iii.    Truthfully, accurately, and timely document the patient's medical record;

    iv.    Retain a full and complete legible copy of the medical record;

    v.    Enact and enforce policies and procedures intended to maximize patient safety including but not limited to:

        a.  Coordination of patient care;

        b.  Care and treatment of the patient;

        c.  Recognizing and responding to the signs and symptoms of the patient, including signs and symptoms of infection and/or an altered mental status that required treatment;

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

    d.  Maintenance/preservation of a patient's medical chart; and

vi.    Any other violations of the standard of practice revealed during the course of discovery.

106.  At all times relevant to the care and treatment of Decedent, Defendant, NAPHCARE, failed in all respects to comply with the applicable standard of practice or care and was therefore professionally negligent in its care and treatment of Decedent. Plaintiff hereby incorporates the attached/enclosed Affidavits of Merit as if set forth fully herein.

107.  That as a direct and proximate result of the aforementioned acts of general negligence, gross negligence, deliberate indifference and/or professional malpractice by Defendant, NAPHCARE, Decedent, MELISSA A. LEDESMA, suffered numerous injuries and damages, including death, as stated in detail in Count I.

**WHEREFORE,** Plaintiff, JEREMY LEDESMA, as Personal Representative of the Estate of MELISSA A. LEDESMA, Deceased, respectfully requests this Honorable Court enter a judgment in his favor against all Defendants and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

## COUNT V
## MEDICAL MALPRACTICE/NEGLIGENCE/GROSS NEGLIGENCE OF DEFENDANTS APRIL A. BROWN, RN; SHAVON FOWLER, RN; CRYSTAL L. MATHIS, RN; MONIQUE RUSAN, LPN; STEVEN M. GRILL, RN; LILA S. ALI, LPN; ROCHELLE A. MILLER, LPN; LANESHIA R. EADDY, LPN; BATRICE J. JONES, RN; RACQUEL B. MORTON, LPN; KELLINA W. BROWN, LPN; SAMIA L. WILLIAMS, LPN; DEANNAH M. HUGHES, LPN; KIM R. CRENSHAW, LPN and VICARIOUS LIABILITY OF DEFENDANT NAPHCARE, INC.

108.  Plaintiff hereby reiterates and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint, as if fully stated herein word for word and paragraph by paragraph.

109.  The standard of care applicable to Defendants, APRIL A. BROWN, RN; SHAVON FOWLER, RN; CRYSTAL L. MATHIS, RN; MONIQUE RUSAN, LPN; STEVEN M. GRILL, RN; LILA S. ALI, LPN; ROCHELLE A. MILLER, LPN; LANESHIA R. EADDY, LPN; BATRICE J. JONES, RN; RACQUEL B. MORTON, LPN; KELLINA W. BROWN, LPN; SAMIA L. WILLIAMS, LPN; DEANNAH M. HUGHES, LPN; KIM R. CRENSHAW, LPN, ("NAPHCARE NURSES") and any other nurses involved in the care and treatment of Decedent, MELISSA A. LEDESMA, is that of a reasonable and prudent registered nurse, licensed practical nurse, and/or nurse in conformance with the degree of the skill and care ordinarily possessed and exercised by practitioners of their profession in the same or similar localities.

{01627100.DOCX}                          31

110. The applicable standard of practice/care required that Defendants, "NAPHCARE NURSES," and any registered nurses, licensed practical nurses, and/or nurses, involved in the care and treatment of Decedent, is to timely and appropriately do all of the following, which they failed to do, and are therefore professionally negligent:

   a. Perform a history and physical examination;

   b. Perform a complete evaluation of the patient;

   c. Carefully assess the condition of the patient and report findings;

   d. Properly triage/intake the patient;

   e. Properly treat the patient;

   f. Properly assess the patient and report to physicians and supervisors when appropriate;

   g. Develop a plan of management;

   h. Monitor the patient's condition and recognize/respond to signs and symptoms of presentation;

   i. Recognize the susceptibility of a patient such as Melissa Ledesma to seizures;

   j. Properly obtain and review all of her medical records, charts, history;

   k. Provide the correct prescribed medications;

   l. Refrain from providing medications to which the patient is allergic;

   m. Communicate plan of management to other physicians and nurses involved in patient's care;

   n. Properly communicate with other staff to confirm the patient is receiving the proper medications and not receiving medications to which the patient is allergic;

   o. Order diagnostic laboratory testing;

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

p. Advocate for treatment by suggesting the appropriate testing and laboratory work;

q. Comply with applicable standards;

r. Speak up, advocate for, and protect the patient; and

s. Any other breaches of the standard of care which may be revealed over the course of discovery.

111. At all times relevant to the care and treatment of Decedent, Defendants, "NAPHCARE NURSES," and any other registered nurses, licensed practical nurses, and/or nurses, failed in all respects to comply with the applicable standard of practice or care and were therefore professionally negligent in their care and treatment of Decedent. Plaintiff hereby incorporates the attached/enclosed Affidavits of Merit as if set forth fully herein.

112. That as a direct and proximate result of the aforementioned acts of general negligence, gross negligence, deliberate indifference and/or professional malpractice by Defendants, "NAPHCARE NURSES," and any other registered nurses, licensed practical nurses, and/or nurses, Decedent, suffered numerous injuries and damages, including death, as stated in Count I.

113. Defendant, NAPHCARE, in addition to its liability for its own acts and omissions as set forth herein, is further liable for the acts and omissions of its agents, ostensible agents, servants, and/or employees who

rendered care and treatment of Decedent, including, but not limited to Defendants, "NAPHCARE NURSES," pursuant to the doctrines of vicarious liability and/or respondeat superior.

**WHEREFORE,** Plaintiff, JEREMY LEDESMA, as Personal Representative of the Estate of MELISSA A. LEDESMA, Deceased, respectfully requests this Honorable Court enter a judgment in his favor against all Defendants and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

**COUNT VI**
**MEDICAL MALPRACTICE/NEGLIGENCE/GROSS NEGLIGENCE**
**OF DEFENDANTS ANDREA L. HIGGONBOTHAM, NP;**
**NICHOLAS J. KAJDAN, NP; SOPHIA L. BARNES, LP; EMILY C.**
**ELLIS, NP; MARSHA K. BURGESS, NP and VICARIOUS**
**LIABILITY OF DEFENDANT NAPHCARE, INC.**

114.    Plaintiff hereby reiterates and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint, as if fully stated herein word for word and paragraph by paragraph.

115.    The standard of care applicable to Defendants, ANDREA L. HIGGONBOTHAM, NP; NICHOLAS J. KAJDAN, NP; SOPHIA L. BARNES, LP; EMILY C. ELLIS, NP; MARSHA K. BURGESS, NP, ("NAPHCARE NPs") and any other nurse practitioners involved in the care and treatment of Decedent, MELISSA A. LEDESMA, is that of a reasonable

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

and prudent nurse practitioner in conformance with the degree of the skill and care ordinarily possessed and exercised by practitioners of their profession in the same or similar localities.

116. The applicable standard of practice/care required that Defendants, "NAPHCARE NPs," and any other nurse practitioners involved in the care and treatment of Decedent, is to timely and appropriately do all of the following, which they failed to do, and are therefore professionally negligent:

a) Perform a history and physical examination;

b) Perform a complete evaluation of the patient;

c) Carefully assess the condition of the patient and report findings;

d) Properly triage/intake the patient;

e) Properly treat the patient;

f) Properly assess the patient and report to physicians and supervisors when appropriate;

g) Develop a plan of management;

h) Monitor the patient's condition and recognize/respond to signs and symptoms of presentation;

i) Recognize the susceptibility of a patient such as Melissa Ledesma to seizures;

j) Properly obtain and review all of her medical records, charts, history;

k) Provide the correct prescribed medications;

l) Refrain from providing medications to which the patient is allergic;

m) Communicate plan of management to other physicians, nurse practitioners, registered nurses, and licensed practical nurses involved in patient's care;

n) Properly communicate with other staff to confirm the patient is receiving the proper medications and not receiving medications to which the patient is allergic;

o) Order diagnostic laboratory testing;

p) Advocate for treatment by suggesting the appropriate testing and laboratory work;

q) Comply with applicable standards;

r) Speak up, advocate for, and protect the patient; and

s) Any other breaches of the standard of care which may be revealed over the course of discovery.

117.   At all times relevant to the care and treatment of Decedent, Defendants, "NAPHCARE NPs," and any other nurse practitioner(s) failed in all respects to comply with the applicable standard of practice or care and were therefore professionally negligent in their care and treatment of Decedent. Plaintiff hereby incorporates the attached/enclosed Affidavits of Merit as if set forth fully herein.

118.   That as a direct and proximate result of the aforementioned acts of general negligence, gross negligence, deliberate indifference and/or professional malpractice by Defendants, "NAPHCARE NPs," and any other

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

nurse practitioners, Decedent suffered numerous injuries and damages, including death, as stated in detail in Count I.

119.   Defendant, NAPHCARE, in addition to its liability for its own acts and omissions as set forth herein, is further liable for the acts and omissions of its agents, ostensible agents, servants, and/or employees who rendered care and treatment of Decedent, including, but not limited to Defendants, "NAPHCARE NPs," pursuant to the doctrines of vicarious liability and/or respondeat superior.

**WHEREFORE,** Plaintiff, JEREMY LEDESMA, as Personal Representative of the Estate of MELISSA A. LEDESMA, Deceased, respectfully requests this Honorable Court enter a judgment in his favor against all Defendants and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

### COUNT VII
### MEDICAL MALPRACTICE/NEGLIGENCE/GROSS NEGLIGENCE OF DEFENDANT DR. MONIQUE M. REEVES and VICARIOUS LIABILITY OF DEFENDANTS NAPHCARE, INC.

170.   Plaintiff hereby reiterates and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint, as if fully stated herein word for word and paragraph by paragraph.

171.   The standard of care applicable to Defendant, DR. MONIQUE M. REEVES, and any other physicians involved in the care and treatment of Decedent, MELISSA A. LEDESMA, is that of a reasonable and prudent medical doctor in conformance with the degree of skill, care and diligence exercised by members of the same profession, practicing in the same or similar locality, in light of the present state of medical science.

172.   The applicable standard of practice/care required that Defendant, DR. MONIQUE M. REEVES, and any other physicians involved in the care and treatment of Decedent, is to timely and appropriately do all of the following, which Defendant, DR. MONIQUE M. REEVES, failed to do, and is therefore professionally negligent:

a)  Perform a history and physical examination;

b)  Perform a complete evaluation of the patient;

c)  Carefully assess the condition of the patient and report findings;

d)  Properly triage/intake the patient;

e)  Properly treat the patient;

f)  Properly assess the patient and report to physicians and supervisors when appropriate;

g)  Develop a plan of management;

h)  Monitor the patient's condition and recognize/respond to signs and symptoms of presentation;

i)  Recognize the susceptibility of a patient such as Melissa Ledesma to seizures;

j) Properly obtain and review all of her medical records, charts, history;

k) Provide the correct prescribed medications;

l) Refrain from providing medications to which the patient is allergic;

m) Communicate plan of management to other physicians and nurses involved in patient's care;

n) Properly communicate with other staff to confirm the patient is receiving the proper medications and not receiving medications to which the patient is allergic;

o) Order diagnostic laboratory testing;

p) Advocate for treatment by suggesting the appropriate testing and laboratory work;

q) Comply with applicable standards;

r) Manage and supervise nursing staff;

s) Speak up, advocate for, and protect the patient; and

t) Any other breaches of the standard of care which may be revealed over the course of discovery.

173.   At all times relevant to the care and treatment of Decedent, Defendant, DR. MONIQUE M. REEVES, failed in all respects to comply with the applicable standard of practice or care and was therefore professionally negligent in her care and treatment of Decedent. Plaintiff hereby incorporates the attached Affidavits of Merit as if set forth fully herein.

174.   That as a direct and proximate result of the aforementioned acts of general negligence, gross negligence, deliberate indifference and/or

professional malpractice by Defendant, DR. MONIQUE M. REEVES, Decedent, MELISSA A. LEDESMA, suffered numerous injuries and damages, including death, as stated in detail in Count I.

175. Defendant, NAPHCARE, in addition to its liability for its own acts and omissions as set forth herein, are further liable for the acts and omissions of its agents, ostensible agents, servants, and/or employees who rendered care and treatment of Decedent, including, but not limited to Defendant, DR. MONIQUE M. REEVES, pursuant to the doctrines of vicarious liability and/or respondeat superior.

**WHEREFORE,** Plaintiff, JEREMY LEDESMA, as Personal Representative of the Estate of MELISSA A. LEDESMA, Deceased, respectfully requests this Honorable Court enter a judgment in his favor against all Defendants and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

**COUNT VIII**
**GENERAL NEGLIGENCE/GROSS NEGLIGENCE**
**OF DEFENDANTS, "NAPHCARE NURSES," "NAPHCARE NPs,"**
**DR. MONIQUE M. REEVES, and**
**VICARIOUS LIABILITY OF DEFENDANT NAPHCARE, INC.**

120. Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

121. At all times relevant hereto, Defendants, "NAPHCARE NURSES," "NAPHCARE NPs," and DR. MONIQUE M. REEVES, and Defendant, NAPHCARE's, staff had a duty to act as a reasonably careful person would act under the same or similar circumstances that existed at the time of the subject incident.

122. At all times relevant hereto, Defendants, "NAPHCARE NURSES," "NAPHCARE NPs," DR. MONIQUE M. REEVES, and the staff of Defendant, NAPHCARE, owed Decedent, the following duties in particular by the way of illustration and not limitation, and breached the same by:

a) Perform a history and physical examination;

b) Perform a complete evaluation of the patient;

c) Carefully assess the condition of the patient and report findings;

d) Properly triage/intake the patient;

e) Properly treat the patient;

f) Properly assess the patient and report to physicians and supervisors when appropriate;

g) Develop a plan of management;

h) Monitor the patient's condition and recognize/respond to signs and symptoms of presentation;

i) Recognize the susceptibility of a patient such as Melissa Ledesma to seizures;

j) Properly obtain and review all of her medical records, charts, history;

k) Provide the correct prescribed medications;

l) Refrain from providing medications to which the patient is allergic;

m) Communicate plan of management to other physicians and nurses involved in patient's care;

n) Properly communicate with other staff to confirm the patient is receiving the proper medications and not receiving medications to which the patient is allergic;

o) Order diagnostic laboratory testing;

p) Advocate for treatment by suggesting the appropriate testing and laboratory work;

q) Comply with applicable standards;

r) Manage and supervise nursing staff;

s) Speak up, advocate for, and protect the patient; and

t) Any other breaches of the standard of care which may be revealed over the course of discovery.

123. The above-described acts of negligence and/or gross negligence by Defendants, "NAPHCARE NURSES," "NAPHCARE NPs," DR.

MONIQUE M. REEVES, and/or the staff of Defendant, NAPHCARE, as well as the actions and inactions set forth in the attached/enclosed Affidavits of Merit, proximately caused Decedent, MELISSA A. LEDESMA, to suffer numerous injuries and damages, including death, as stated in detail in Count I.

124.    Defendant, NAPHCARE, is liable for the acts and omissions of its agents, ostensible agents, servants, and/or employees who rendered care and treatment to Decedent, including, but not limited to Defendants, "NAPHCARE NURSES," "NAPHCARE NPs," DR. MONIQUE M. REEVES, and/or the staff of Defendant, pursuant to the doctrines of vicarious liability and/or respondeat superior.

**WHEREFORE,** Plaintiff, JEREMY LEDESMA, as Personal Representative of the Estate of MELISSA A. LEDESMA, Deceased, respectfully requests this Honorable Court enter a judgment in his favor against all Defendants and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

## COUNT IX
## DELIBERATE INDIFFERENCE TO MEDICAL NEEDS
## AGAINST "NAPHCARE NURSES," "NAPHCARE NPs," DR.
## MONIQUE M. REEVES, and DEFENDANT NAPHCARE, INC.

151.   Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

152.   Decedent was subjected to a deprivation of clearly established, constitutionally protected rights and privileges secured by the Constitution of the United States.

153.   The foregoing rights were clearly established at the time of the violations.

154.   At all times mentioned herein, Defendants, "NAPHCARE NURSES," "NAPHCARE NPs," DR. MONIQUE M. REEVES, and NAPHCARE, were acting under color of law and/or their statutory or legal authority.

155.   At all times relevant hereto, Defendants, "NAPHCARE NURSES," "NAPHCARE NPs," DR. MONIQUE M. REEVES, and NAPHCARE, subjected Decedent to a deprivation of her rights, privileges, and immunities, as secured by the Constitution and laws of the United States and State of Michigan.

156. Pursuant to 42 U.S.C. § 1983, as well as the Eighth, and Fourteenth Amendments to the United States Constitution, Defendants, "NAPHCARE NURSES," "NAPHCARE NPs," DR. MONIQUE M. REEVES, and NAPHCARE, owed Decedent, the duties to act prudently and with reasonable care, and otherwise to avoid cruel and unusual punishment.

157. Pursuant to the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, the Civil Rights Acts, specifically 42 U.S.C. § 1983, an inmate like Decedent had the right to medical treatment for serious medical needs while in custody as well as to be free from cruel and unusual punishment.

158. The conduct described herein and in the attached/enclosed Affidavits of Merit of Defendant, NAPHCARE, through Defendants, "NAPHCARE NURSES," "NAPHCARE NPs," DR. MONIQUE M. REEVES, deprived Decedent of her clearly established rights, privileges, and immunities in violation of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution and 42 USC § 1983.

159. Defendants, "NAPHCARE NURSES," "NAPHCARE NPs," DR. MONIQUE M. REEVES, and NAPHCARE, owed a duty, and specifically to Decedent, to act prudently, and with reasonable care in the formulation of its policies and procedures relative to providing medical

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

treatment to inmates, as well as to train, test, evaluate, review, and update staff to function in a reasonable manner and in conformance with the laws of the United States and the State of Michigan relative to providing inmates with the appropriate and relevant medical attention to their known and well documented medical needs.

160.   Defendants, "NAPHCARE NURSES," "NAPHCARE NPs," and DR. MONIQUE M. REEVES, violated Decedent's civil rights when they displayed deliberate indifference toward Decedent's serious medical condition, as described previously in this pleading.

161.   These deprivations were caused by the customs, policies, and established practices of Defendant, NAPHCARE, acting under color of its statutory and legal authority.

162.   Defendants, "NAPHCARE NURSES," "NAPHCARE NPs," and DR. MONIQUE M. REEVES, committed the constitutional violations herein as a result of the training and/or lack of re-training, lack of supervision, lack of direction, and lack of monitoring by Defendant, NAPHCARE.

163.   Defendant, NAPHCARE, failed to properly train, monitor, direct, discipline and supervise its medical staff, and knew or should have known that its medical staff, specifically Defendants, "NAPHCARE

NURSES," "NAPHCARE NPs," and DR. MONIQUE M. REEVES, would engage in the complained of behavior.

164.   In the aforementioned policies, practices, and customs of Defendant, NAPHCARE, and its failure to properly and adequately train, monitor, instruct, direct, discipline, and supervise Defendants, "NAPHCARE NURSES," "NAPHCARE NPs," DR. MONIQUE M. REEVES, and perhaps other NAPHCARE employees, was reckless and deliberately indifferent to a likelihood that the constitutional rights of the public, and particularly Plaintiff's decedent, would be violated.

165.   This improper training, monitoring, instruction, direction, discipline, and supervision proximately caused the deprivation of Decedent's constitutional rights.

166.   As a direct and proximal result of the unconstitutional acts and omissions of Defendants, "NAPHCARE NURSES," "NAPHCARE NPs," DR. MONIQUE M. REEVES, and perhaps other NAPHCARE employees, Decedent suffered numerous injuries and damages, including death, as stated in detail in Count I.

167.   The acts and/or omissions of Defendants, "NAPHCARE NURSES," "NAPHCARE NPs," DR. MONIQUE M. REEVES, and NAPHCARE, were willful, wanton, reckless, malicious, oppressive and/or

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

done with a conscious or reckless disregard for the rights of Decedent, and Plaintiff therefore requests an award of punitive and exemplary damages against these Defendants according to proof.

168.    Plaintiff has retained private counsel to represent him in this matter and is entitled to an award of attorney fees and costs.

**WHEREFORE,** Plaintiff, JEREMY LEDESMA, as Personal Representative of the Estate of MELISSA A. LEDESMA, Deceased, respectfully requests this Honorable Court enter a judgment in his favor against all Defendants and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

Respectfully submitted,
***Fieger, Fieger, Kenney & Harrington, P.C.***

By: */s/ David A. Dworetsky*
DAVID A. DWORETSKY (P67026)
Attorneys for Plaintiff
19390 West Ten Mile Road
Southfield, Michigan 48075
(248) 355-5555
d.dworetsky@figerlaw.com

Dated: May 30, 2024

*Affidavit of Merit – Melissa Ledesma, deceased*

## AFFIDAVIT OF MERITORIOUS CLAIM OF
## KEITH BRYAN HAYNIE, NP-C PURSUANT TO MCL 600.2912d

STATE OF NEW MEXICO )
                          ) ss
COUNTY OF Bernalillo )

I hereby certify that I have reviewed the Notice of Intent to File Claim and all medical records supplied by the Plaintiff's attorney concerning the allegations contained in the Notice. During the year immediately preceding the date of the occurrence that is the basis for this action, I devoted a majority of my professional time to the active clinical practice as a nursing practitioner. I further reserve the right to add or amend this Affidavit as additional information becomes available. My opinions are preliminary because I have not reviewed all deposition testimony and may not have reviewed all complete medical records. I, therefore, reserve the right to amend and supplement my opinions after reviewing any additional materials submitted to me.

### A. THE APPLICABLE STANDARD OF CARE OR PRACTICE

1. NAPHCARE, INC. – ANDREA L. HIGGONBOTHAM, NP; NICHOLAS J. KAJDAN, NP; SOPHIA L. BARNES, NP, LP; EMILY C. ELLIS, NP; and MARSHA K. BURGESS, NP.

The standard of care or practice applicable to Andrea L. Higgonbotham, NP; Nicholas J. Kajdan, NP; Sophia L. Barnes, NP, LP; Emily C. Ellis, NP; and Marsha K. Burgess, NP, of the above stated entity is that of a reasonable and prudent Nurse Practitioner, the skill and care ordinarily possessed and exercised by practitioners of their profession in the same or similar localities. At a minimum, Andrea L. Higgonbotham, NP; Nicholas J. Kajdan, NP; Sophia L. Barnes, NP, LP; Emily C. Ellis, NP; and Marsha K. Burgess, NP, owed a duty to:

       a) Perform a history and physical examination;
       b) Perform a complete evaluation of the patient;
       c) Carefully assess the condition of the patient and report findings;

     d) Properly triage/intake the patient;

     e) Properly treat the patient;

     f) Properly assess the patient and report to physicians and supervisors when appropriate;

     g) Develop a plan of management;

     h) Monitor the patient's condition and recognize/respond to signs and symptoms of presentation;

     i) Recognize the susceptibility of a patient such as Melissa Ledesma to seizures;

     j) Properly obtain and review all of her medical records, charts, history;

     k) Provide the correct prescribed medications;

     l) Refrain from providing medications to which the patient is allergic;

     m) Communicate plan of management to other physicians, nurse practitioners, registered nurses, and licensed practical nurses involved in patient's care;

     n) Properly communicate with other staff to confirm the patient is receiving the proper medications and not receiving medications to which the patient is allergic;

     o) Order diagnostic laboratory testing;

     p) Advocate for treatment by suggesting the appropriate testing and laboratory work;

     q) Comply with applicable standards;

     r) Speak up, advocate for, and protect the patient; and

     s) Any other breaches of the standard of care which may be revealed over the course of discovery.

## 2. NAPHCARE, INC.

Naphcare, Inc. remains vicariously liable for any act or omission of any of its agents, actual or ostensible, or employees at the Wayne County Jail, including but not limited to: Andrea L. Higgonbotham, NP; Nicholas J. Kajdan, NP; Sophia L. Barnes, NP, LP; Emily C. Ellis, NP; Marsha K. Burgess, NP, patient care technicians, and those under their supervision. For Naphcare, Inc., the standard of practice or care is that of a reasonable and prudent health facility. When presented with a patient like Melissa Ledesma, the standard of practice or care required Naphcare, Inc. directly and acting through its agents and employees, to timely and appropriately do all of the following:

     i.   Select, screen, train, and employ only qualified personnel;

     ii.  Effectively and adequately screen Nurse Practitioners during the hiring process before allowing them to provide patient care;

     iii. Truthfully, accurately, and timely document the patient's medical record;

    iv.   Retain a full and complete legible copy of the medical record;

    v.   Enact and enforce policies and procedures intended to maximize patient safety including but not limited to:

        a.  Coordination of patient care;

        b.  Care and treatment of the patient;

        c.  Recognizing and responding to the signs and symptoms of the patient, including signs and symptoms of infection and/or an altered mental status that required treatment;

        d.  Maintenance/preservation of a patient's medical chart; and

    vi.   Any other violations of the standard of practice revealed during the course of discovery.

## B. THE APPLICABLE STANDARD OF PRACTICE OR CARE WAS BREACHED

1. **NAPHCARE, INC. – ANDREA L. HIGGONBOTHAM, NP; NICHOLAS J. KAJDAN, NP; SOPHIA L. BARNES, NP, LP; EMILY C. ELLIS, NP; and MARSHA K. BURGESS, NP.**

The Wayne County Jail medical staff, consisting of employees, agents, or representatives of Naphcare, Inc., including but not limited to Andrea L. Higgonbotham, NP; Nicholas J. Kajdan, NP; Sophia L. Barnes, NP, LP; Emily C. Ellis, NP; and Marsha K. Burgess, NP, breached the standard of practice and were negligent, and grossly negligent by failing to do the following:

    a)  Perform a history and physical examination;
    b)  Perform a complete evaluation of the patient;
    c)  Carefully assess the condition of the patient and report findings;
    d)  Properly triage/intake the patient;
    e)  Properly treat the patient;
    f)  Properly assess the patient and report to physicians and supervisors when appropriate;
    g)  Develop a plan of management;
    h)  Monitor the patient's condition and recognize/respond to signs and symptoms of presentation;
    i)  Recognize the susceptibility of a patient such as Melissa Ledesma to seizures;
    j)  Properly obtain and review all of her medical records, charts, history;
    k)  Provide the correct prescribed medications;
    l)  Refrain from providing medications to which the patient is allergic;

m) Communicate plan of management to other physicians, nurse practitioners, registered nurses, and licensed practical nurses involved in patient's care;

n) Properly communicate with other staff to confirm the patient is receiving the proper medications and not receiving medications to which the patient is allergic;

o) Order diagnostic laboratory testing;

p) Advocate for treatment by suggesting the appropriate testing and laboratory work;

q) Comply with applicable standards;

r) Speak up, advocate for, and protect the patient; and

s) Any other breaches of the standard of care which may be revealed over the course of discovery.

## 2. NAPHCARE, INC.

Naphcare, Inc., directly and through its agents, breached the applicable standard of practice or care by failing to timely and appropriately do all of the following:

i.  Select, screen, train, and employ only qualified personnel;

ii.  Effectively and adequately screen Nurse Practitioners during the hiring process before allowing them to provide patient care;

iii.  Truthfully, accurately, and timely document the patient's medical record;

iv.  Retain a full and complete legible copy of the medical record;

v.  Enact and enforce policies and procedures intended to maximize patient safety including but not limited to:

    a.  Coordination of patient care;

    b.  Care and treatment of the patient;

    c.  Recognizing and responding to the signs and symptoms of the patient, including signs and symptoms of infection and/or an altered mental status that required treatment;

    d.  Maintenance/preservation of a patient's medical chart; and

vi.  Any other violations of the standard of practice revealed during the course of discovery.

## C.  THE ACTIONS WHICH SHOULD HAVE BEEN TAKEN OR OMITTED BY THE HEALTHCARE PROFESSIONALS AND FACILITIES IN ORDER TO HAVE COMPLIED WITH THE APPLICABLE STANDARD OF CARE OR PRACTICE

*Affidavit of Merit – Melissa Ledesma, deceased*

## 1. NAPHCARE, INC. – ANDREA L. HIGGONBOTHAM, NP; NICHOLAS J. KAJDAN, NP; SOPHIA L. BARNES, NP, LP; EMILY C. ELLIS, NP; and MARSHA K. BURGESS, NP.

The Wayne County Jail medical staff, staffed by Naphcare, Inc. employees,

including but not limited to Nurse Practitioners, Andrea L. Higgonbotham, NP; Nicholas

J. Kajdan, NP; Sophia L. Barnes, NP, LP; Emily C. Ellis, NP; and Marsha K. Burgess, NP,

to be compliant with the standard of practice or care, should have timely and appropriately

performed all of the following:

        a) Perform a history and physical examination;
        b) Perform a complete evaluation of the patient;
        c) Carefully assess the condition of the patient and report findings;
        d) Properly triage/intake the patient;
        e) Properly treat the patient;
        f) Properly assess the patient and report to physicians and supervisors when appropriate;
        g) Develop a plan of management;
        h) Monitor the patient's condition and recognize/respond to signs and symptoms of presentation;
        i) Recognize the susceptibility of a patient such as Melissa Ledesma to seizures;
        j) Properly obtain and review all of her medical records, charts, history;
        k) Provide the correct prescribed medications;
        l) Refrain from providing medications to which the patient is allergic;
        m) Communicate plan of management to other physicians and nurses involved in patient's care;
        n) Properly communicate with other staff to confirm the patient is receiving the proper medications and not receiving medications to which the patient is allergic;
        o) Order diagnostic laboratory testing;
        p) Advocate for treatment by suggesting the appropriate testing and laboratory work;
        q) Comply with applicable standards;
        r) Speak up, advocate for, and protect the patient; and
        s) Any other breaches of the standard of care which may be revealed over the course of discovery.

## 2. NAPHCARE, INC.

Naphcare, Inc., directly and through its agents, to be compliant with the standard

of practice or care, should have timely and appropriately performed all of the following:

i. Select, screen, train, and employ only qualified personnel;

ii. Effectively and adequately screen Nurse Practitioners during the hiring process before allowing them to provide patient care;

iii. Truthfully, accurately, and timely document the patient's medical record;

iv. Retain a full and complete legible copy of the medical record;

v. Enact and enforce policies and procedures intended to maximize patient safety including but not limited to:

    a. Coordination of patient care;

    b. Care and treatment of the patient;

    c. Recognizing and responding to the signs and symptoms of the patient, including signs and symptoms of infection and/or an altered mental status that required treatment;

    d. Maintenance/preservation of a patient's medical chart; and

vi. Any other violations of the standard of practice revealed during the course of discovery.

## D. THE MANNER IN WHICH THE BREACH WAS THE PROXIMATE CAUSE OF CLAIMED INJURY

The above-descried breaches of the standard of care by Nurse Practitioners, Andrea L. Higgonbotham, NP; Nicholas J. Kajdan, NP; Sophia L. Barnes, NP, LP; Emily C. Ellis, NP; and Marsha K. Burgess, NP, from the Naphcare, Inc., were a direct and/or proximate cause of the death of Melissa Ledesma due to seizure disorder. It is my opinion that more likely than not, to a reasonable degree of medical certainty, but for the joint and several negligence and/or gross negligence of the aforementioned healthcare providers created a foreseeable risk of injury and/or death to Melissa Ledesma that would have been prevented.

Further affiant sayeth not.

_____
KEITH BRYAN HAYNIE, NP-C

Subscribed and sworn to before me
this 20ᵗʰ day of May, 2024

*Affidavit of Merit – Melissa Ledesma, deceased*

Lindsay E. Schmidt

Notary Public
County of Bernalillo State of New Mexico
My Commission Expires: 07/31/2027

STATE OF NEW MEXICO
NOTARY PUBLIC
LINDSAY K SCHMIDT
COMMISSION # 2000185
COMMISSION EXPIRES 07/31/2027

*Affidavit of Merit – Melissa Ledesma, deceased*

### AFFIDAVIT OF MERITORIOUS CLAIM OF TRACEY J. CHRISTY, RN, BSN PURSUANT TO MCL 600.2912d

STATE OF MICHIGAN )
                        ) ss
COUNTY OF )

      I hereby certify that I have reviewed the Notice of Intent to File Claim and all medical records supplied by the Plaintiff's attorney concerning the allegations contained in the Notice. I am a licensed registered nurse, and during the year immediately preceding the date of the occurrence that is the basis for this action, I devoted a majority of my professional time to the active clinical practice of nursing. I further reserve the right to add or amend this Affidavit as additional information becomes available. My opinions are preliminary because I have not reviewed all deposition testimony and may not have reviewed all complete medical records. I, therefore, reserve the right to amend and supplement my opinions after reviewing any additional materials submitted to me.

**A.**     **THE APPLICABLE STANDARD OF CARE OR PRACTICE**

    **1. NAPHCARE, INC. – WAYNE COUNTY JAIL NURSING STAFF, INCLUDING BUT NOT LIMITED TO APRIL A. BROWN, RN; SHEVON FOWLER, RN; CRYSTAL L. MATHIS, RN; MONIQUE RUSAN, LPN; STEVEN M. GRILL, RN; LILA S. ALI, LPN; ROCHELLE A. MILLER, LPN; LANESHIA R. EADDY, LPN; BATRICE J. JONES, RN; RACQUEL B. MORTON, LPN; KELLINA W. BROWN, LPN; SAMIA L. WILLIAMS, LPN; DEANNAH M. HUGHES, LPN; and KIM R. CRENSHAW, LPN.**

    The standard of care or practice applicable to April A. Brown, RN; Shevon Fowler, RN; Crystal L. Mathis, RN; Monique Rusan, LPN; Steven M. Grill, RN; Lila S. Ali, LPN; Rochelle A. Miller, LPN; Laneshia R. Eaddy, LPN; Batrice J. Jones, RN; Racquel B. Morton, LPN; Kellina W. Brown, LPN; Samia L. Williams, LPN; Deannah M. Hughes, LPN; Kim R. Crenshaw, LPN; and/or other RN's/LPN's, of the above stated entity is that

*Affidavit of Merit – Melissa Ledesma, deceased*

of a reasonable and prudent nurse and licensed practical nurse, the skill and care ordinarily possessed and exercised by practitioners of their profession in the same or similar localities. At a minimum, April A. Brown, RN; Shevon Fowler, RN; Crystal L. Mathis, RN; Monique Rusan, LPN; Steven M. Grill, RN; Lila S. Ali, LPN; Rochelle A. Miller, LPN; Laneshia R. Eaddy, LPN; Batrice J. Jones, RN; Racquel B. Morton, LPN; Kellina W. Brown, LPN; Samia L. Williams, LPN; Deannah M. Hughes, LPN, Kim R. Crenshaw, LPN; and perhaps others, owed a duty to:

 a) Perform a history and physical examination;
 b) Perform a complete evaluation of the patient;
 c) Carefully assess the condition of the patient and report findings;
 d) Properly triage/intake the patient;
 e) Properly treat the patient;
 f) Properly assess the patient and report to physicians and supervisors when appropriate;
 g) Develop a plan of management;
 h) Monitor the patient's condition and recognize/respond to signs and symptoms of presentation;
 i) Recognize the susceptibility of a patient such as Melissa Ledesma to seizures;
 j) Properly obtain and review all of her medical records, charts, history;
 k) Provide the correct prescribed medications;
 l) Refrain from providing medications to which the patient is allergic;
 m) Communicate plan of management to other physicians and nurses involved in patient's care;
 n) Properly communicate with other staff to confirm the patient is receiving the proper medications and not receiving medications to which the patient is allergic;
 o) Order diagnostic laboratory testing;
 p) Advocate for treatment by suggesting the appropriate testing and laboratory work;
 q) Comply with applicable standards;
 r) Speak up, advocate for, and protect the patient; and
 s) Any other breaches of the standard of care which may be revealed over the course of discovery.

## 2. NAPHCARE, INC.

Naphcare, Inc. remains vicariously liable for any act or omission of any of its agents, actual or ostensible, or employees at the Wayne County Jail, including but not

*Affidavit of Merit – Melissa Ledesma, deceased*

limited to: to April A. Brown, RN; Shevon Fowler, RN; Crystal L. Mathis, RN; Monique Rusan, LPN; Steven M. Grill, RN; Lila S. Ali, LPN; Rochelle A. Miller, LPN; Laneshia R. Eaddy, LPN; Batrice J. Jones, RN; Racquel B. Morton, LPN; Kellina W. Brown, LPN; Samia L. Williams, LPN; Deannah M. Hughes, LPN; Kim R. Crenshaw, LPN; and any other unidentified nurses, RNs, LPNs, including those under their supervision.   For Naphcare, Inc., the standard of practice or care is that of a reasonable and prudent health facility.   When presented with a patient like Melissa Ledesma, the standard of practice or care required Naphcare, Inc. directly, and acting through its agents, employees, RNs, and LPNs is to timely and appropriately do all of the following:

    i.    Select, screen, train, and employ only qualified personnel;

    ii.    Effectively and adequately screen Registered Nurses and Licensed Practical Nurses during the hiring process before allowing them to provide patient care;

    iii.    Truthfully, accurately, and timely document the patient's medical record;

    iv.    Retain a full and complete legible copy of the medical record;

    v.    Enact and enforce policies and procedures intended to maximize patient safety including but not limited to:

        a.    Coordination of patient care;

        b.    Care and treatment of the patient;

        c.    Recognizing and responding to the signs and symptoms of the patient, including signs and symptoms of infection and/or an altered mental status that required treatment;

        d.    Maintenance/preservation of a patient's medical chart; and

    vi.    Any other violations of the standard of practice revealed during the course of discovery.

*Affidavit of Merit – Melissa Ledesma, deceased*

## B.  THE APPLICABLE STANDARD OF PRACTICE OR CARE WAS BREACHED

### 1. NAPHCARE, INC. – WAYNE COUNTY JAIL NURSING STAFF, INCLUDING BUT NOT LIMITED TO APRIL A. BROWN, RN; SHEVON FOWLER, RN; CRYSTAL L. MATHIS, RN; MONIQUE RUSAN, LPN; STEVEN M. GRILL, RN; LILA S. ALI, LPN; ROCHELLE A. MILLER, LPN; LANESHIA R. EADDY, LPN; BATRICE J. JONES, RN; RACQUEL B. MORTON, LPN; KELLINA W. BROWN, LPN; SAMIA L. WILLIAMS, LPN; DEANNAH M. HUGHES, LPN; and KIM R. CRENSHAW, LPN.

The Wayne County Jail nursing staff, consisting of employees, agents, or representatives of Naphcare, Inc., including but not limited to April A. Brown, RN; Shevon Fowler, RN; Crystal L. Mathis, RN; Monique Rusan, LPN; Steven M. Grill, RN; Lila S. Ali, LPN; Rochelle A. Miller, LPN; Laneshia R. Eaddy, LPN; Batrice J. Jones, RN; Racquel B. Morton, LPN; Kellina W. Brown, LPN; Samia L. Williams, LPN; Deannah M. Hughes, LPN; Kim R. Crenshaw, LPN; and perhaps others, breached the standard of practice and were negligent and grossly negligent by failing to do the following:

a) Perform a history and physical examination;
b) Perform a complete evaluation of the patient;
c) Carefully assess the condition of the patient and report findings;
d) Properly triage/intake the patient;
e) Properly treat the patient;
f) Properly assess the patient and report to physicians and supervisors when appropriate;
g) Develop a plan of management;
h) Monitor the patient's condition and recognize/respond to signs and symptoms of presentation;
i) Recognize the susceptibility of a patient such as Melissa Ledesma to seizures;
j) Properly obtain and review all of her medical records, charts, history;
k) Provide the correct prescribed medications;
l) Refrain from providing medications to which the patient is allergic;
m) Communicate plan of management to other physicians and nurses involved in patient's care;
n) Properly communicate with other staff to confirm the patient is receiving the proper medications and not receiving medications to which the patient is allergic;
o) Order diagnostic laboratory testing;

*Affidavit of Merit – Melissa Ledesma, deceased*

    p) Advocate for treatment by suggesting the appropriate testing and laboratory work;
    q) Comply with applicable standards;
    r) Speak up, advocate for, and protect the patient; and
    s) Any other breaches of the standard of care which may be revealed over the course of discovery.

## 2. NAPHCARE, INC.

Naphcare Inc., directly and through its agents, breached the applicable standard of practice or care by failing to timely and appropriately do all of the following:

    i.   Select, screen, train, and employ only qualified personnel;

    ii.   Effectively and adequately screen Registered Nurses and Licensed Practical Nurses during the hiring process before allowing them to provide patient care;

    iii.   Truthfully, accurately, and timely document the patient's medical record;

    iv.   Retain a full and complete legible copy of the medical record;

    v.   Enact and enforce policies and procedures intended to maximize patient safety including but not limited to:

        a.  Coordination of patient care;

        b.  Care and treatment of the patient;

        c.  Recognizing and responding to the signs and symptoms of the patient, including signs and symptoms of infection and/or an altered mental status that required treatment;

        d.  Maintenance/preservation of a patient's medical chart; and

    vi.   Any other violations of the standard of practice revealed during the course of discovery.

*Affidavit of Merit – Melissa Ledesma, deceased*

**C.** **THE ACTIONS WHICH SHOULD HAVE BEEN TAKEN OR OMITTED BY THE HEALTHCARE PROFESSIONALS AND FACILITIES IN ORDER TO HAVE COMPLIED WITH THE APPLICABLE STANDARD OF CARE OR PRACTICE**

**1. NAPHCARE, INC. – WAYNE COUNTY JAIL NURSING STAFF, INCLUDING BUT NOT LIMITED TO APRIL A. BROWN, RN; SHEVON FOWLER, RN; CRYSTAL L. MATHIS, RN; MONIQUE RUSAN, LPN; STEVEN M. GRILL, RN; LILA S. ALI, LPN; ROCHELLE A. MILLER, LPN; LANESHIA R. EADDY, LPN; BATRICE J. JONES, RN; RACQUEL B. MORTON, LPN; KELLINA W. BROWN, LPN; SAMIA L. WILLIAMS, LPN; DEANNAH M. HUGHES, LPN; and KIM R. CRENSHAW, LPN.**

The Wayne County Jail nursing staff, consisting of employees, agents, or representatives of Naphcare, Inc., including but not limited to April A. Brown, RN; Shevon Fowler, RN; Crystal L. Mathis, RN; Monique Rusan, LPN; Steven M. Grill, RN; Lila S. Ali, LPN; Rochelle A. Miller, LPN; Laneshia R. Eaddy, LPN; Batrice J. Jones, RN; Racquel B. Morton, LPN; Kellina W. Brown, LPN; Samia L. Williams, LPN; Deannah M. Hughes, LPN; Kim R. Crenshaw, LPN; and perhaps others, to be compliant with the standard of practice or care, should have timely and appropriately performed all of the following:

  a) Perform a history and physical examination;
  b) Perform a complete evaluation of the patient;
  c) Carefully assess the condition of the patient and report findings;
  d) Properly triage/intake the patient;
  e) Properly treat the patient;
  f) Properly assess the patient and report to physicians and supervisors when appropriate;
  g) Develop a plan of management;
  h) Monitor the patient's condition and recognize/respond to signs and symptoms of presentation;
  i) Recognize the susceptibility of a patient such as Melissa Ledesma to seizures;
  j) Properly obtain and review all of her medical records, charts, history;
  k) Provide the correct prescribed medications;
  l) Refrain from providing medications to which the patient is allergic;

*Affidavit of Merit – Melissa Ledesma, deceased*

    m) Communicate plan of management to other physicians and nurses involved in patient's care;

    n) Properly communicate with other staff to confirm the patient is receiving the proper medications and not receiving medications to which the patient is allergic;

    o) Order diagnostic laboratory testing;

    p) Advocate for treatment by suggesting the appropriate testing and laboratory work;

    q) Comply with applicable standards;

    r) Speak up, advocate for, and protect the patient; and

    s) Any other breaches of the standard of care which may be revealed over the course of discovery.

## 2. NAPHCARE, INC.

Naphcare, Inc., directly and through its agents, to be compliant with the standard of practice or care, should have timely and appropriately performed all of the following:

    i. Select, screen, train, and employ only qualified personnel;

    ii. Effectively and adequately screen Registered Nurses and Licensed Practical Nurses during the hiring process before allowing them to provide patient care;

    iii. Truthfully, accurately, and timely document the patient's medical record;

    iv. Retain a full and complete legible copy of the medical record;

    v. Enact and enforce policies and procedures intended to maximize patient safety including but not limited to:

        a. Coordination of patient care;

        b. Care and treatment of the patient;

        c. Recognizing and responding to the signs and symptoms of the patient, including signs and symptoms of infection and/or an altered mental status that required treatment;

        d. Maintenance/preservation of a patient's medical chart; and

    vi. Any other violations of the standard of practice revealed during the course of discovery.

*Affidavit of Merit – Melissa Ledesma, deceased*

**D.**     **THE MANNER IN WHICH THE BREACH WAS THE PROXIMATE CAUSE OF CLAIMED INJURY**

The above-descried breaches of the standard of care by April A. Brown, RN; Shevon Fowler, RN; Crystal L. Mathis, RN; Monique Rusan, LPN; Steven M. Grill, RN; Lila S. Ali, LPN; Rochelle A. Miller, LPN; Laneshia R. Eaddy, LPN; Batrice J. Jones, RN; Racquel B. Morton, LPN; Kellina W. Brown, LPN; Samia L. Williams, LPN; Deannah M. Hughes, LPN; Kim R. Crenshaw, LPN; and perhaps others, from Naphcare, Inc., were a direct and/or proximate cause of the death of Melissa Ledesma due to seizure disorder. It is my opinion that more likely than not, to a reasonable degree of medical certainty, but for the joint and several negligence and/or gross negligence of the aforementioned healthcare providers created a foreseeable risk of injury and/or death to Melissa Ledesma that would have been prevented.

Further affiant sayeth not.

TRACEY J. CHRISTY, RN, BSN

Subscribed and sworn to before me
this _21_ day of _MAY_, 2024

Notary Public County of _OTTAWA_
State of _MICHIGAN_
My Commission Expires: _MAY 21, 2029_

TRACI L KOCH
Notary Public - State of Michigan
County of Muskegon
My Commission Expires May 21, 2029
Acting in the County of _OTTAWA_

{01619993.DOCX}                                     8

### AFFIDAVIT OF MERITORIOUS CLAIM OF MARK CICHON, DO PURSUANT TO MCL 600.2912d

STATE OF ILLINOIS              )
                               ) ss
COUNTY OF                      )

I hereby certify that I have reviewed the Notice of Intent to File a Claim and all medical records supplied by the Plaintiff's attorney concerning the allegations contained in the Notice.  I am a licensed health professional specializing in Emergency Medicine and have devoted the majority of my professional time as Associate Chief Medical Officer and Physician in Chief at Loyola University Medical Center, Chairman – Department of Emergency Medicine, at Loyola University Medical Center, HMOI Medical Director at Loyola University Medical Center and have performed emergency services at Loyola University Medical Center.  During the year immediately preceding the date of the occurrence that is the basis for this action, the majority of my professional time was dedicated to both the active clinical practice of Emergency Medicine or the instruction of students in an accredited health professional school or accredited residency or clinical research program in Emergency Medicine.  I further reserve the right to add to or amend this affidavit as additional information becomes available.  My opinions are preliminary because I have not reviewed any deposition testimony and may not have reviewed complete medical records.  I, therefore, reserve the right to amend and supplement my opinions after reviewing any additional materials submitted to me.

### I.    THE APPLICABLE STANDARD OF PRACTICE OR CARE ALLEGED

#### 1.  DR. MONIQUE M. REEVES

The standard of care applicable to Dr. Monique M. Reeves; Naphcare, Inc., vicariously; and any physicians under her supervision, is that of a specialist in emergency medicine, board certified in emergency medicine.  Dr. Monique M. Reeves, a licensed and practicing physician specializing

in emergency medicine, when presented with a patient exhibiting signs and symptoms such as those demonstrated by Melissa Ledesma, owed a duty to:

    a) Perform a history and physical examination;
    b) Perform a complete evaluation of the patient;
    c) Carefully assess the condition of the patient and report findings;
    d) Properly triage/intake the patient;
    e) Properly treat the patient;
    f) Properly assess the patient and report to physicians and supervisors when appropriate;
    g) Develop a plan of management;
    h) Monitor the patient's condition and recognize/respond to signs and symptoms of presentation;
    i) Recognize the susceptibility of a patient such as Melissa Ledesma to seizures;
    j) Properly obtain and review all of her medical records, charts, history;
    k) Provide the correct prescribed medications;
    l) Refrain from providing medications to which the patient is allergic;
    m) Communicate plan of management to other physicians and nurses involved in patient's care;
    n) Properly communicate with other staff to confirm the patient is receiving the proper medications and not receiving medications to which the patient is allergic;
    o) Order diagnostic laboratory testing;
    p) Advocate for treatment by suggesting the appropriate testing and laboratory work;
    q) Comply with applicable standards;
    r) Manage and supervise nursing staff;
    s) Speak up, advocate for, and protect the patient; and
    t) Any other breaches of the standard of care which may be revealed over the course of discovery.

## 2. NAPHCARE, INC.

The standard of care required that Naphcare, Inc., directly and vicariously, when presented with a patient exhibiting signs and symptoms such as those demonstrated by Melissa Ledesma, owed a duty to:

    i. Select, screen, train, and employ only qualified personnel;
    ii. Effectively and adequately screen physicians during the credentialing process before granting hospital/clinic privileges and/or continuing hospital/clinic privileges;
    iii. Truthfully and accurately document the patient's medical record;
    iv. Retain a full and complete legible copy of the medical record;
    v. Enact and enforce policies and procedures intended to maximize patient safety including but not limited to:
        a. Coordination of patient care;
        b. Care and treatment of the patient;

*Affidavit of Merit – Melissa Ledesma, deceased*

  c. Recognizing and responding to the signs and symptoms of the patient, including signs and symptoms of infection and/or an altered mental status that required treatment;

  d. Maintenance/preservation of a patient's medical chart; and

 vi. Any other violations of the standard of practice revealed during the course of discovery.

## II. THE APPLICABLE STANDARD OF PRACTICE OR CARE WAS BREACHED

### 1. DR. MONIQUE M. REEVES

Dr. Monique M. Reeves; Naphcare, Inc., directly and vicariously; and any physicians under her supervision, breached the standard of practice and were negligent and/or grossly negligent by failing to do the following:

 a) Perform a history and physical examination;

 b) Perform a complete evaluation of the patient;

 c) Carefully assess the condition of the patient and report findings;

 d) Properly triage/intake the patient;

 e) Properly treat the patient;

 f) Properly assess the patient and report to physicians and supervisors when appropriate;

 g) Develop a plan of management;

 h) Monitor the patient's condition and recognize/respond to signs and symptoms of presentation;

 i) Recognize the susceptibility of a patient such as Melissa Ledesma to seizures;

 j) Properly obtain and review all of her medical records, charts, history;

 k) Provide the correct prescribed medications;

 l) Refrain from providing medications to which the patient is allergic;

 m) Communicate plan of management to other physicians and nurses involved in patient's care;

 n) Properly communicate with other staff to confirm the patient is receiving the proper medications and not receiving medications to which the patient is allergic;

 o) Order diagnostic laboratory testing;

 p) Advocate for treatment by suggesting the appropriate testing and laboratory work;

 q) Comply with applicable standards;

 r) Manage and supervise nursing staff;

 s) Speak up, advocate for, and protect the patient; and

 t) Any other breaches of the standard of care which may be revealed over the course of discovery.

### 2. NAPHCARE, INC.

Naphcare, Inc., directly and vicariously, through its agents, ostensible agents, and/or employees, via emergency medicine specialists, including but not limited to, Dr. Monique M. Reeves, when presented with a patient exhibiting signs and symptoms such as those demonstrated by Melissa

*Affidavit of Merit – Melissa Ledesma, deceased*

Ledesma, breached the standard of practice and were negligent and/or grossly negligent, and are therefore vicarious liable, by failing to do the following:

    i.   Select, screen, train, and employ only qualified personnel;

    ii.   Effectively and adequately screen physicians during the credentialing process before granting hospital/clinic privileges and/or continuing hospital/clinic privileges;

    iii.   Truthfully and accurately document the patient's medical record;

    iv.   Retain a full and complete legible copy of the medical record;

    v.   Enact and enforce policies and procedures intended to maximize patient safety including but not limited to:

        e.   Coordination of patient care;

        f.   Care and treatment of the patient;

        g.   Recognizing and responding to the signs and symptoms of the patient, including signs and symptoms of infection and/or an altered mental status that required treatment;

        h.   Maintenance/preservation of a patient's medical chart; and

    vi.   Any other violations of the standard of practice revealed during the course of discovery.

### III. THE ACTIONS WHICH SHOULD HAVE BEEN TAKEN OR OMITTED BY THE HEALTH CARE PROFESSIONALS AND FACILITIES IN ORDER TO HAVE COMPLIED WITH THE APPLICABLE STANDARD OF CARE OR PRACTICE

#### 1. DR. MONIQUE M. REEVES

Dr. Monique M. Reeves; Naphcare, Inc.; directly and vicariously, and any physicians under her supervision, were to be compliant with the standard of practice or care, and should have timely and appropriately performed the following:

    a)  Perform a history and physical examination;

    b)  Perform a complete evaluation of the patient;

    c)  Carefully assess the condition of the patient and report findings;

    d)  Properly triage/intake the patient;

    e)  Properly treat the patient;

    f)  Properly assess the patient and report to physicians and supervisors when appropriate;

    g)  Develop a plan of management;

    h)  Monitor the patient's condition and recognize/respond to signs and symptoms of presentation;

    i)  Recognize the susceptibility of a patient such as Melissa Ledesma to seizures;

    j)  Properly obtain and review all of her medical records, charts, history;

    k)  Provide the correct prescribed medications;

    l)  Refrain from providing medications to which the patient is allergic;

*Affidavit of Merit – Melissa Ledesma, deceased*

    m) Communicate plan of management to other physicians and nurses involved in patient's care;
    n) Properly communicate with other staff to confirm the patient is receiving the proper medications and not receiving medications to which the patient is allergic;
    o) Order diagnostic laboratory testing;
    p) Advocate for treatment by suggesting the appropriate testing and laboratory work;
    q) Comply with applicable standards;
    r) Manage and supervise nursing staff;
    s) Speak up, advocate for, and protect the patient; and
    t) Any other breaches of the standard of care which may be revealed over the course of discovery.

## 2. NAPHCARE, INC.

Naphcare, Inc., directly and vicariously, through its agents, ostensible agents, and/or employees, via emergency medicine specialists, including but not limited to Dr. Monique M. Reeves and any physicians under her supervision, to be compliant with the standard of practice or care, should have timely and appropriately performed all of the following:

    i.   Select, screen, train, and employ only qualified personnel;
    ii.  Effectively and adequately screen physicians during the credentialing process before granting hospital/clinic privileges and/or continuing hospital/clinic privileges;
    iii. Truthfully and accurately document the patient's medical record;
    iv. Retain a full and complete legible copy of the medical record;
    v.  Enact and enforce policies and procedures intended to maximize patient safety including but not limited to:
        a.  Coordination of patient care;
        b.  Care and treatment of the patient;
        c.  Recognizing and responding to the signs and symptoms of the patient, including signs and symptoms of infection and/or an altered mental status that required treatment;
        d.  Maintenance/preservation of a patient's medical chart; and
    vi. Any other violations of the standard of practice revealed during the course of discovery.

## IV.   THE MANNER IN WHICH THE BREACH WAS THE PROXIMATE CAUSE OF CLAIMED INJURY

The above-described breaches of the standard of care by Dr. Monique M. Reeves; Naphcare, Inc.; directly and vicariously, and any physicians under her supervision, were a direct and/or proximate cause of the death of Melissa Ledesma due to seizure disorder. It is my

*Affidavit of Merit   Melissa Ledesma. deceased*

opinion that more likely than not, to a reasonable degree of medical certainty, but for the joint and several negligence and/or gross negligence of the aforementioned healthcare providers created a foreseeable risk of injury and/or death to Melissa Ledesma that would have been prevented.

 Further affiant sayeth not.

Dated: _May 13_ , 2024

_____
MARK CICHON DO

Subscribed and sworn to before me this 13 day of May 2024

_Mary Beth Abramczyk_
Notary Public
County of _Cook_____

My Commission Expires: _____

MARY BETH ABRAMCZYK
Official Seal
Notary Public - State of Illinois
My Commission Expires May 22, 2025